CORNELIA DECKER *vs.* JOHN H. WATERMAN and others.

By the terms of a will, property which had been the subject of previous gifts was, in legal effect, given, by specific bequests, to such prior donees. *Held*, that this amounted to a full and complete confirmation of such donations.

A testatrix, by her will, gave and bequeathed to M. W. and C. D. and their heirs, all the property "*left*" by her at the time of her death, to be equally divided between them, share alike; and directed as follows: "All property or valuable things heretofore disposed of, or given away, by me, shall not be taken into the account, in making said division." *Held*, that a clear intention was manifested by the testatrix that all previous gifts and presents by her made should stand ratified and confirmed; and hence, that property previously disposed of by gift and the possession delivered, was not embraced in the bequest.

*Held*, also, that a person claiming under the will, as devisee, could not question its validity. And that this court could not inquire into the circumstances under which the will was executed, after it had been admitted to probate by a tribunal having competent jurisdiction.

*Held*, further, that if, in any proceeding, the previous gifts of the testatrix should be held invalid, then, as to the property given, and the avails thereof, the testatrix died intestate, and a devisee would not be benefited by setting the gifts aside.

Decker *v.* Waterman.

The fact that the relation of principal and agent exists, does not prevent the principal from making a voluntary donation to his agent. Such a donation is not absolutely prohibited by the rules of law.

But when it is established that such a relation exists between the donor and donee, before the validity of the gift will be upheld it must be made to appear that the transaction was unaffected by fraud, either actual or constructive. The burden of proof rests on the donee, to establish its perfect fairness and propriety.

What is sufficient and satisfactory proof, on which to declare a gift from a principal to her agent valid, and free from the taint of fraud or undue influence.

Undue influence consists in destroying the freedom of the donor's will, so as to make his act rather the will and act of the donee than his own. And such influence must be specifically directed to accomplish the thing done.

If the mind of the donor was brought to a purpose preconceived by the donee, for his own advantage, by an influence the donor could not escape, under the circumstances in which she was placed, and which was deliberately used to effect such purpose, then that influence, or its exercise, was undue and improper.

Testamentary bequests, made by a testator for the benefit and advantage of those who hold fiduciary relations towards him, are not judged altogether by the same severe rule that gifts *inter vivos* are. The same presumptions are not indulged in, as to fraud and undue influence.

A gift by will, by a *cestui que trust* to his trustee, by a principal to his agent, by a client to his attorney, or by a ward to his guardian, is upheld on less evidence that there was no fraud or undue influence, than is a gift *in presenti.*

Yet if the facts disclose that the person taking the benefit was instrumental in procuring the bequest, then the rule will not be modified, towards him.

Where the circumstances are such that, if a gift had been embodied in a *will,* as a bequest to the donee, and if the will had been offered for probate, no court would reject the same on the ground that the devisee procured the same by fraud, or the exercise of undue influence over the testatrix, then a gift *inter vivos,* made under the like circumstances, may be upheld, as against the claim of those who take by inheritance.

THIS action was brought for the single purpose of setting aside, and declaring void, a transfer of an interest in certain bonds and mortgages, made by Mary Decker, in her lifetime, to the defendant, John H. Waterman.

Mr. *Thompson,* for the plaintiff.

*John H. White,* for the defendant Mary Waterman.

*E. Porter*, for the defendant John H. Waterman, executor, &c.

*George Bullard*, for the defendant Daniel Decker.

BARKER, J. The transfer in question was made by an instrument in writing bearing date March 1, 1865. Afterwards, and on the 18th day of November, 1867, Mary Decker made and executed a last will and testament. She departed this life on the 27th day of September, 1869, leaving such last will and testatment in force and effect, and the same was duly admitted to probate on the 13th day of December, 1869, by and before the surrogate of Orleans county. The defendant John H. Waterman is named as executor, in such will, and letters testamentary were issued to him by the said surrogate, and he accepted the trust and entered upon the execution of the same. He is made a defendant in both his individual and representative capacity.

The plaintiff and the defendant Mary Waterman, who is the wife of the defendant John H. Waterman, are named as sole legatees, in said will; and to them the testatrix bequeathed all her property, in equal proportions.

As the terms of such devise, and the estate bequeathed, have an important and controlling effect in the determination of the case, the same will be copied here. They are as follows: "After all of my lawful debts are paid and descharged, I give and bequeath [to] my nieces, Mary Waterman and Cornelia Decker, and their heirs, all the property of every description, left by me at my death, to be equally divided between them, share alike. All property or valuable things heretofore disposed of, or given away by me, shall not be taken into the account in making the said division. And what portion of my property now possessed by me which I may dispose of

Decker *v.* Waterman.

before my death shall not be taken into such account, in making the division.''

Notwithstanding it is manifest that the testatrix, by her will, confirmed her previous gift of these bonds and mortgages to John H. Waterman, and the plaintiff must be defeated in her claims, it will be well to find and state the business relation existing between the testatrix and John H. Waterman at the time of making the gift, and also the family ties that had been created and were in force and operating to guide and influence each, in their social intercourse.

After the death of Benjamin Decker, the husband of the testatrix, which occurred in December, 1864, Waterman, at the request of Mrs. Decker, assisted her in the management of all her business, visited her at her home in Cayuga county, and there aided in the management of her affairs ; advised and assisted in the sale of the real estate belonging to her ; converted the personal estate into money ; collected debts ; and when all the effects were converted into money and securities, Mrs. Decker accompanied him to his own house in Orleans county, he keeping the actual possession of the securities, and all future transactions being under his observation and management.

The power and authority actually conferred does not appear to be broad enough to make him a general agent, to act without consulting her, as business was transacted ; but it was her manifest intention to submit all her business affairs to his supervision and management — that he should have the keeping and be the custodian of her securities and cash items. The relation of principal and agent was, in fact and in law, established. The real relation was very much like that of attorney and client ; his office being, largely, to advise and guide her in the care, use and disposition of her property. The management that followed the making of the gift is strongly

confirmatory of this view. The same continued up to the time of the death of the testatrix.

As to the family ties, and relationship, they were close, intimate and confidential, and had long existed. Mary Waterman was her own niece, and at one time was a member of her family. John H. Waterman, in early life, lived in the family of Benjamin Decker, and he and his wife regarded Waterman with almost filial affection. Upon the death of Benjamin, his widow, the testatrix, immediately summoned W. to her home, and brought him into the management of her affairs. She broke up her own home, disposed of her household effects, evidently intending never to keep house again, and went to the home of Waterman, where she lived most of the time, and died in his family. At the time of the assignment of the bond and mortgage to Waterman, it, with other securities, was in his custody, and the donor a member of his family, sick and under the doctor's care, needing much attention and careful nursing. In view of her age and the nature of her illness, there was reason to apprehend that it might terminate fatally.

From the evidence given, and the circumstances disclosed, such seems a fair statement of the business relation existing between the donor and the donee, and the opportunities he possessed to induce and influence her to make the gift. In its nature, Waterman's position was one of confidence, and his obligations were strictly fiduciary.

Before considering the question whether this gift can be upheld as an original transaction, I shall seek to determine whether it is now an open question.

When the will was made, the gift, in form at least, was a consummated transaction. The transfer of title was by an instrument in writing. No question is made but that it was the donor's deed — that she knew its effect and meaning. This is the more unmistakably so from the fact that by the terms of the instrument of con-

Decker *v.* Waterman.

veyance she provided for the payment of legacies under her husband's will, which were a charge on her property received from the same source; and she also, by the same instrument, made a gift of $1,000 to Mrs. Bevier. By the terms of the will, the property which had been the subject of previous gifts was, in legal effect, given, by specific bequests, to such donees. This must be treated as a full and complete confirmation of such donations. No other view can reasonably be taken of the provisions of the will, and such must have been the intention of the testatrix.

The devising clause of the will, in express terms, limits the effect of the same to the property "*left* by me at the time of my death." In the very next clause, the testatrix, in most explicit terms, excludes from the effect of the devising and granting clause "all property or valuable thing heretofore disposed of, or given away by me," and declares it "*shall not* be taken into the account in making the said division." The next clause in the will relates to property then owned by her, and excludes from the bequests so much of that as she might in her lifetime give away or dispose of.

A fair and reasonable interpretation of this indicates the clear intention of the testatrix that all previous gifts and presents by her made shall stand ratified and confirmed. At least it cannot be claimed that property previously disposed of by gift, and the possession delivered is embraced in the bequest. She has said to these legatees: "I do not give you such property; the same shall not be considered and taken into account in dividing between you the property I intend for you."

The plaintiff stands on this will; it is her title deed; she has none other; she does not, she cannot question its validity. This court cannot inquire into the circumstances under which it was executed; for it has been admitted to probate by a tribunal having competent jurisdiction.

These considerations determine the case against the plaintiff. If the gift to Waterman be void for the reasons averred, and a court of equity could not uphold it as an original transaction, it would be of no advantage to the plaintiff to set it aside. In law, she must be treated as a stranger to that question, so long as she claims under the will. If this gift to Waterman be in any proceeding held invalid, then, as to that property, and the avails thereof, Mrs. Decker died intestate.

As the plaintiff seeks to investigate the transaction between the testatrix and Waterman and questions its validity, and the defendants have sought, by their proofs and arguments, to upold the same as legal, free from fraud and undue influence, and as a just, equitable and proper gift, and a full consideration having been given ; in that view of the case, I will express the conclusions at which I have arrived on both the facts and the law applicable to the same as an original affair.

In the first instance, I shall consider the validity of the gift, treating Waterman as an agent to Mrs. Decker, and acting as her attorney.

The fact that such a relationship exists does not prevent the principal from making a voluntary donation to his agent and attorney. The same is not absolutely prohibited by the rules of law. But when it is established that such a relation exists between the donor and donee, then before the validity of the gift will be upheld, it must be made to appear that the transaction was unaffected by fraud of any description whatever, either actual or constructive. The burden of proof rests on the donee, to establish its perfect fairness and propriety. And it is the duty of the court to search the evidence carefully, and be vigilant to ascertain the real nature and character of the transaction, and to learn the mind and motives of the giver. If such proof cannot be given, then the case will be treated as one of constructive fraud, and set aside. (*Cook* v. *Lamotte*, 11

*Law and Eq.*, 26; *Hoghton* v. *Hoghton*, *Id.*, 134. *Comstock* v. *Comstock*, 57 *Barb.*, 453. *Platt* v. *Platt*, 2 *Thomp. & C.*, 29. *Story's Eq. Jur.*, § 309, *p.* 315. *Hill on Trusts*, *4th ed.*, *pp.* 156 *to* 162, *marg. p. and cases cited in notes.*)

The burden of proof being cast on the donee, now the inquiry is — What is sufficient and satisfactory proof on which to declare the gift valid? Each case must necessarily be determined by the features it presents, and the surroundings of the transaction. When the relation is simply one of principal and agent — and I am considering this case in that view, only, in connection with these remarks — the proofs are usually held to be sufficient and satisfactory when they show that the donor knew what he was about; the value of the thing donated; the exact situation of the property; the effect it would have on his own estate; the condition in which he would be left; if the gift was effected by a deed, or an instrument in writing, that the same was read over and explained before execution, its contents being fully understood and comprehended.

That Mrs. Decker knew the value, extent and nature of her estate appears quite certain. It had but just come to her, by the devise and bequest of her husband, and largely from the avails of real estate then recently sold. It does not seem probable that Waterman could have deceived her, in the least, respecting it. It is not less sure and certain that she knew the contents of the assignment. Mr. Goff, the attorney who prepared it, testifies that before the same was prepared, the matter of it was talked over; and that before it was executed, it was read over to her, and she said it was right. The same instrument contained a provision for paying off and discharging the several bequests due to others, under her husband's will, and embraced a gift to a Mrs. Bevier, a niece of her husband. Nor do I doubt, from all the evidence, that she was fully aware that at that

time she was parting with the title to those bonds and mortgages; that her mind was to make the gift to Waterman; that she saw in what condition it left her estate, and the means of support remaining to her thereafter. This conclusion is strengthened by the circumstance that she was in possession of her faculties, at that time, and made a will, by the terms of which she disposed of her property. The gift to Mrs. Bevier; the donation to Waterman; the provision to pay off the bequests in her husband's will, the only charge, probably, on her estate, and no debts outstanding; and the execution of the will; give the case every feature of a testamentary bequest, and should be largely considered as such, in judging of its fairness and validity. In my opinion it must be held, as a matter of fact, that she knew, and fully appreciated the situation; and that nothing existed, bearing on the transaction, that she did not know, and nothing was said to her that was not true.

The gift, then, must be upheld; unless there was an undue influence exercised, to produce the mind and purpose in Mrs. Decker to make to Waterman this transfer of property. In view of the business relation existing and the family ties and intimacy above set forth, the law does presume, as against the recipient of favor, thus situated, that he did exercise an undue influence. That the charge of undue influence is sustained, in the first instance, by showing an opportunity to exercise it, by the donee.

I am convinced that, judging of the evidence by the rules established as applicable to such cases, the donee has met the presumptions existing against him, has satisfactorily explained how the gift came to be made; that it is free from the taint of fraud or undue influence.

Let us briefly consider the case. Undue influence consists in destroying the freedom of the donor's will, so as to make his act rather the will and act of the

donee than his own. And such influence must be specially directed to accomplish the thing done. (*Gardner* v. *Gardner*, 34 *N. Y.*, 161.) If the mind of the donor was brought to a purpose preconceived by the donee for his own advantage, by an influence the donor could not escape, under the circumstances in which she was placed, and which was deliberately used to effect such purpose, then that influence, or its exercise, was undue and improper. (*Tyler* v. *Gardner*, 35 *N. Y.*, 596. *Bergen* v. *Udall*, 31 *Barb.*, 25.) As before remarked, this gift to Waterman should be treated largely as a testamentary affair. It certainly was concurrent with the making and publishing of a will and testament — both prepared by the same attorney, and executed with no less form and solemnity. Mrs. Decker was sick, and beyond much doubt, feared that she might not recover from such illness. By the terms of her will, together with the gift to Mrs. Bevier, and the gift to Waterman, she disposed of all her estate, designating, in all, four distinct persons as the objects of her bounty.

Testamentary bequests, made by a testator for the benefit and advantage of those who hold fiduciary relations towards him, are not judged altogether by the same severe rule that gifts *inter vivos* are ; the same presumptions are not indulged in, as to fraud and undue influence. A gift by will by a *cestui que trust* to his trustee, by a principal to his agent, by a client to his attorney, or by a ward to his guardian, is upheld on less evidence that there was no fraud or undue influence, than is a gift *in presenti*. (*Hill on Trusts*, 158, *margin and notes; Hinson* v. *Wetherill*, 5 *De G., M. & G.*, 301.) If, however, the facts disclose that the person taking the benefit be instrumental in procuring the bequest, then the rule would not be modified towards him.

There is no direct evidence in the case, that Waterman suggested this donation to himself. As against its validity, the whole proof rests in presumption. In the

evidence of Mr. Goff, we have the idea suggested that before he was called in to prepare the conveyance, the matter had been up and considered, between Mrs. Decker and Mr. Waterman; for Goff states that when he commenced to draw the will, Mrs. Decker said to him that Waterman was going to pay off the legacies mentioned in her husband's will. The plaintiff and her husband testify, in substance, that in April preceding the transfer, and at the time Mrs. Decker came to their house in company with Waterman, he said, in speaking of her sickness "that they did not expect her to live, *and they got her to make a will*," and made no mention of the assignment. Waterman denies making any such remark. Mr. Goff further states that he conversed with Mrs. Decker, and learned from her the provisions of the will then made, and that she communicated to him what she wanted done with the bonds and mortgages; that after they were prepared, the same being done in her presence, they were — both the will and the assignment — read over and explained to her, before execution; that the conversation about the business was had aside from the family; that Mrs. Decker, in speaking of Waterman, said that he had lived with them when he was a boy, and he got the impression from her remarks, that Waterman was brought up in their family. Mr. Miller, who was present and witnessed the execution of the will, confirms fully the statement of Mr. Goff, in most particulars, and also says that Mrs. Decker told him that she was distributing her property, and that she wanted Waterman to have the balance of mortgeges, after paying Mrs. Bevier $1,000, and the legacies.

If the usual reliance is placed on this evidence, such as is accorded to unimpeached witnesses, it goes very far in meeting the presumptions of the law, that the position and influence of Waterman brought Mrs. Decker's mind to the making of this gift, and to establish that it was her free act and disposition, being moved by feel-

ings of kindness and affection towards Waterman. Waterman had done her no great favors, nor put her under many obligations, since the death of her husband. All that he had done had been compensated in a pecuniary reward ample and generous enough. No where in the evidence are the personal characteristics of Mrs. Decker described ; nor is it disclosed what was the strength of her mind, and the nature of her disposition. Whether she easily submitted to the suggestions of others, or not, cannot be very satisfactorily determined. It does appear, however, that by the will then made, she gave the balance of her property — some seven or eight thousand dollars — to the plaintiff and the wife of Waterman ; that they are her nieces ; and it is not disclosed that she had any other blood relations. Mr. Goff had acted, before this, as the attorney of Waterman, and afterwards acted as his attorney in defence of a suit prosecuted against him as executor of Mrs. Decker's will. This circumstance causes a degree of suspicion that the attorney was brought in to aid his client in effecting an arrangement beneficial to himself; and that if friendly suggestions were needed to be made, they would not be omitted, on his part. Goff swears, however, that Waterman said nothing, beyond asking him to come to his house and prepare the will. If the negotiations were intended to be fair and honorable, the calling of his own attorney was also a very proper and natural course. It is a circumstance to be weighed in all its bearings.

I am fully convinced that if this gift to Waterman had been embraced in the will that day made and executed, as a bequest to him, and such will had been left by the testatrix to stand; and the same were offered for probate, on the proofs here made, no court would reject the same on the ground that the devisee procured the same by fraud or the exercise of undue influence over the testatrix. (1 *Jarman on Wills*, 44, *and note.*)

I am unable to see why a gift *inter vivos,* made under like circumstances, cannot be upheld, as against the claim of those who take by inheritance.

The plaintiff has not seen fit, in any degree, to disturb the final accounting had before the surrogate, but has acquiesced in the decree made by the surrogate.

In view of the conclusion reached, that by the terms of the will the plaintiff has failed to establish any title to the property, she must pay the defendant, John H. Waterman, his taxable costs.

Judgment for defendants.

[ORLEANS SPECIAL TERM, October, 1876. *Barker,* Justice.]