WESTCHESTER COUNTY.—HON. OWEN T. COFFIN, SURRO-
GATE.—March and April, 1882.

CHALKER v. CHALKER.

*In the matter of the estate of* MARTHA B. CHALKER, *de-*
*ceased.*

The testatrix was stricken with paralysis March 1, and died May 3, 1879,
leaving a small estate of about $1,200, of which the sum of $1,125 was
in savings bank. By her will, executed March 19, 1879, she bequeathed
this sum in equal shares to her two sons, one of whom she appointed
her executor. The latter had the chief care of her during the illness,
and she died at his house. On his accounting, the executor omitted to
charge himself with the $1,125, claiming it as a gift *inter vivos*, from
his mother. He testified that, on April 10, 1879, she proposed to give
him the deposit, and signed an order on the bank, which was witnessed
by her attending physician; that he drew the money and delivered it
to her, whereupon she handed it again to him, requesting him to make
good use of it, pay some debts, etc. The physician was not called.
Objections to the account being filed,—

*Held,* that, in view of the relationship between decedent and the alleged
donee, the burden of proof lay upon him to establish the fairness and
propriety of the gift; that it was impossible to discover the mind and
motives of decedent; that the circumstances of her illness, the unex-
plained annulment of her recent natural testamentary disposition, and
the advantage of situation of the claimant, who alone testified to the
transaction, led to the conclusion that the gift did not proceed from
her own free will ; and that the executor must account for the sum in
dispute, as part of the estate.

The sum of $40, for a burial plot, is a reasonable disbursement, as a part
of the funeral expenses, where decedent's personal estate is $1,200.

Under Code Civ. Pro., § 2557, prohibiting the allowance of costs, by the
Surrogate, other than expenses, out of an estate or fund less than
$1,000 in amount or value, the amount of an estate is not the balance
left after payment of funeral expenses, debts and expenses of adminis-
tration, but the gross amount thereof, at the time of the owner's death,
with any increase up to the time of accounting.

HEARING of objections on the judicial settlement of

the account of Sumner Chalker, executor, etc., of decedent.

The testatrix was seized with her last illness about March 1, 1879, made her will on the 19th of the same month, and died on May 3rd, following. The bulk of her small estate consisted of $1,125, of which $1,000 was in a savings bank at Portchester, Westchester county, and $125 in a savings bank at Hartford, Conn. When attacked with her illness, which was paralysis, she was boarding at East Portchester, in Connecticut, where she remained until a few days before her death. Her son, Sumner Chalker, who resided in New Rochelle, had the chief care of her during her sickness; he gave instructions for the preparation of her will, of which he was made executor, and which, among other things, bequeathed the $1,125, after the payment of her debts and funeral expenses, equally to him and his brother Homer, her only sons; but the latter share was to be held in trust for Homer's life, with remainder over to Homer's children. The executor did not, on his accounting, charge himself with this sum, claiming that his mother gave it to him about the 10th day of April preceding her death. His statement, on being examined by the contestant Homer Chalker, was that she proposed to give him the money; that she signed an order on the savings bank directing the payment of the money to him, which was witnessed by her attending physician; that he went to the bank, drew the money, carried and handed it to her, who handed it back to him without counting it, and said she gave it to him, requesting him to make good use of it, pay some debts, etc. The physician was not called to testify.

Some questions, other than that of the validity of this gift, were raised, which are disposed of in the opinion.

BANKS & ROOSEVELT, *for executor.*

ARTHUR T. HOFFMAN, *for objector.*

THE SURROGATE.—The chief question for consideration is the validity of the gift, the evidence showing the capacity of the testatrix to transact business understandingly, to be very doubtful.

When it is established that a relationship exists, such as principal and agent, attorney and client, parent and child, between the donor and donee, then, before the validity of the gift will be upheld, it must be made to appear that the transaction was unaffected by fraud of any description whatever, either actual or constructive. The burden of proof rests on the donee, to establish its perfect fairness and propriety. And it is the duty of the court to search the evidence carefully, and be vigilant to ascertain the real nature and character of the transaction, and to learn the mind and motives of the giver. If such proof cannot be given, then the case will be treated as one of constructive fraud, and the gift set aside (Decker *v.* Waterman, 67 *Barb.*, 460).

Now, considering that the alleged donor had, shortly before the date of the alleged gift, been stricken with paralysis, by which her body and mind were shattered ; that she had then executed a will which she was deemed competent to execute only because it was in accordance with the laws of natural affection and justice, by which she had given the bulk of her small property equally, to her two sons, one of whom was to hold the share of the

other in trust, for sufficient reasons ; and considering that, shortly thereafter, this alleged gift was made by her, by which the will was materially changed and almost rendered nugatory, without any reference being made by her to that will, it seems to me that the transaction cannot be sustained as a valid gift. It is impossible to learn the real mind and motives of the deceased. It may well be that she intended, provided she had mind and memory sufficient to form an intelligent intention, to place the money, or what should remain of it after paying her debts and funeral expenses, in the hands of Sumner Chalker, for himself and brother, thus adeeming the legacies, and so far superseding the provisions of the will. Sumner was in almost constant attendance upon his mother during her illness of about seven weeks, from about March 1st to May 3d, when she died, and in a position affording him every facility to take advantage of her mental and physical weakness. She was seized with the disease of which she died on March 1st; the will was executed on the 19th of the same month ; the alleged gift made April 10th, and she died May 3d. The alleged donee is the only witness who testifies to the transaction. Of course, he has a vital interest in having it pronounced valid. While our statute renders him competent as a witness for the contestant, it leaves his testimony open to such criticism and suspicion as are always engendered by the fact of an existing pecuniary interest. In the case of Griffiths *v.* Robins (3 *Madd.,* 191), it was held that, to maintain a gift under such circumstances as appear in this case, it must be established, by the intervention of a third person, that the gift proceeded from the free will of the donor, and was fully.

understood by her. In Goddard *v.* Carlisle (9 *Price*, 169), the court laid down the same doctrine. These cases are cited approvingly in Nesbit *v.* Lockman (34 *N. Y.*, 167). Sears *v.* Shafer (6 *N. Y.*, 268) is also a strong authority on the point under consideration.

The alleged gift must, therefore, be regarded as invalid, and the executor be required to account for the money he so obtained from the deceased, but as he paid some debts of hers, after he received it and before she died, those items should be allowed to him. None of them are objected to, except the item of $8 paid for housekeeping. As the objection taken to his testimony as to transactions and communications between him and the deceased is sustained, there is no evidence to prove the item, and it is, therefore, disallowed. The item of $40 for a burial plot, being a part of the funeral expenses, and, under the circumstances, reasonable, is allowed.

As to the item of $168, being a claim of the executor for services rendered by him to her during her last sickness, I exclude all of the executor's testimony on the subject as incompetent, and must, therefore, look elsewhere for evidence on the subject. It appears, then, from the testimony of his sister, that, after the first week of the illness of the testatrix, the executor and his wife were in attendance upon her, they residing at New Rochelle and she being at East Portchester in Connecticut, about fifteen miles distant; that she was removed to their house in New Rochelle some four or five days before her death, where, the presumption is, they cared for her. It otherwise appears that the executor was active in procuring the making of the will, and in other ways busied himself in her affairs. On the whole, I

do not consider his bill an unreasonable one, and it is accordingly allowed. . Costs are allowed to contestant.

Decreed accordingly.

———

Subsequently to the entry of the decree, in accordance with the above opinion, a motion was made to open the same, so far as to permit a reconsideration of the question of allowance of costs, it being claimed by the executor that the amount and value of the estate was less than $1,000. The inventory filed showed the amount of the estate, which was wholly personal property, to be only $303.42, but it was found (above) that it should be increased by the sum of $1,125, being the amount of an alleged gift, held to be invalid, and out of which the executor had paid some of testatrix's debts to the amount of $242. It also appeared that the sum of $187.16 embraced in the inventory was the amount of claims which could not be collected. The executor was charged with $45, for interest on the amount of the alleged gift, which was treated as increase.

C. H. ROOSEVELT, *for the motion.*

A. T. HOFFMAN, *opposed.*

THE SURROGATE.—By section 2557 of the Code, it is provided that " costs, other than actual expenses, cannot be awarded to be paid out of an estate or fund, which is less than one thousand dollars, in amount or value." The sole question is,—did or did not the amount of the estate of the deceased exceed $1,000? At the time of settling the decree, it was decided that it did, and I see no good reason to hold otherwise now. The amount of the estate at the time of the death of the owner, with,

perhaps, any increase thereon up to the time of the accounting, must determine as to the power of the court to exercise the discretion with which it is clothed, as to granting or withholding costs.

The estate of a decedent consists of all of his possessions at the time of death, and it is such estate which must be administered ; which administration consists in the payment of funeral expenses, expenses of administration, debts and legacies, or distributive shares. As to the personal estate, the inventory usually fixes the amount in the first instance, but it may be corrected by showing that articles were embraced in it which did not belong to the deceased, that others were not worth the appraised value, and that still others were worthless ; as debts which were not collectible. Besides, items may be added which should have been embraced in it. When such corrections have been made, the value and amount of the estate is ascertained ; but if there has been any increase, I am inclined to think the amount of it should be added. Thus, the figures resulting inform the court whether it can exercise its discretion in regard to granting costs. That funeral expenses, debts and expenses of administration have been paid out of the amount of the estate, can make no difference. The question of costs is determined, not by the amount of the balance of the estate after such payments, but by the gross amount thereof.

In this case, the inventory filed disclosed the amount of the estate to be $303.42, but the testimony showed that an item of $1,125, claimed to have been given away by the deceased in her life-time, and which was found not to have been a valid gift, had not been placed upon the inventory, and belonged to her estate. This made

the whole amount, $1,428.42, but it also appeared that of the items on the inventory $187.16 was uncollectible, thus reducing the amount of the estate to $1,241.26, without taking into consideration the sum of about $45 of increase, which would make it $1,286.26. The court therefore had power to award costs.

It is claimed, however, that the sums paid out of the $1,125, by Sumner Chalker, in satisfaction of claims against the deceased, during her life-time, to the amount of $242, should not be regarded as any part of the estate, and that thus the amount thereof, without including the amount of the increase, would be less than $1,000. Assuming that this sum was, in various items, paid by him prior to her death, about which there seems to be some question, yet as the alleged gift, by virtue of which he held the money, was declared void as such, he had no right to use it for any purpose; and any such payments made by him must be treated as advancements made for the deceased, and thus constitute claims against her estate. Indeed, he presented a verified claim to this court, embracing these payments, in which he alleged they were "for cash advanced by him for her account." But, conceding that the $242 should be deducted, there still remains $1,044.26 as the amount of the estate.

It is also asked that the decree be opened in order to enable the executor to show that, instead of $1,125, the amount of the alleged gift was only $1,114, and that, therefore, the executor is charged with $11 too much. The figures which he now seeks to reduce were taken from his own evidence, and if he there made a mistake, I can see no propriety in opening the case, to litigate as to that small sum, at a probable expense of more than

twice the amount.    The motion must be denied.    As the question is novel, costs are not granted to either party. . Ordered accordingly.