ter. The man is certainly an entire stranger to me and practically so to Mr. McNamara, but, having shown himself as the author of these letters [referring to said obscene letters], I feel that you will agree with others and myself that he should be punished. Trusting that with your kind help, we may succeed in at least stopping this practice, I am,

    "Most sincerely yours,          J. Ormond Goldan."

The complaint then alleges that the "defendant, by composing and publishing and causing to be published the above letter, meant and charged that this plaintiff had been and was guilty of the crime of sending obscene letters through the mails." The defendant demurred to the complaint upon the ground that it did not state facts sufficient to constitute a cause of action; and, from the interlocutory judgment overruling the demurrer, the defendant appeals to this court.

The rule, supported by a long line of authorities, in actions for libel, requires something more than allegations of conclusions of fact. The facts themselves must be alleged from which the conclusion may be drawn. In a case like the present it is not enough to characterize the anonymous letters mentioned; but the contents of such letters must be set forth in order that it may appear on the face of the pleadings that they are of the character charged. People v. Danihy, 63 Hun, 579, 581, 18 N. Y. Supp. 467, and authorities there cited. The letter set out in the complaint merely alleges that some one has been writing and sending anonymous letters. The mere characterizing of such letters as obscene by the pleader is not an allegation of fact, but a conclusion from facts, none of which are shown to exist. Writing and sending anonymous letters is not a crime. Such letters might be entirely innocent. It is only when they are in fact obscene that the writing and mailing of them becomes a crime, and the facts from which the conclusion is to be drawn should appear in the pleadings.

For this reason, we think the facts do not constitute a cause of action, and the interlocutory judgment should be reversed with costs, and the demurrer sustained, with costs, with leave to plaintiff to amend complaint upon payment of said costs. All concur.

(52 Misc. Rep. 263)

### In re MARLOR'S ESTATE.

(Surrogate's Court, Kings County. December, 1906.)

WILLS—UNDUE INFERENCE—BURDEN OF PROOF.

    Testatrix made her lawyer, who had acted in a fiduciary capacity for her, her executor and trustee of a fund for the benefit of one of her friends, and gave to his grandchildren the residuum of her estate. The lawyer drew the will in accordance with secret instructions, and his wife and son were two of the three subscribing witnesses. No provision was made for the husband and son of the testatrix, and the will was hurriedly executed at the executor's house, where testatrix had gone to dine. The will excused executor from giving bond, and he had inserted in the will, voluntarily, a power to sell the real estate. *Held*, that the burden of proving the absence of undue influence rested on the executor, and the mere proof of the execution of the will was insufficient to admit it to probate.

    [Ed. Note.—For cases in point, see Cent. Dig. vol. 49, Wills, §§ 389–402.]

    103 N.Y.S.—11

In the matter of the estate of Jane Ann Marlor.   Probate of will denied.

Brownell & Patterson, for proponent.
William D. Veeder, for contestant.
Jerry A. Wernberg, for committee of John S. Marlor.
John Hill Morgan, special guardian, for William Penn Esterbrook and Emily Dorothy Esterbrook.
Harris G. Eames, special guardian, for John S. Marlor.

CHURCH, S.   Upon the proceedings for the probate of the will in question, after the three subscribing witnesses were examined, the contestants requested that one Johnson, the attorney who drafted the will, supervised its execution, and who was the executor named therein, should be placed upon the stand as a surrogate's witness, in pursuance of the provisions of section 2618 of the Code of Civil Procedure.   Upon the conclusion of his evidence, both sides rested; the contestants claiming that the case was one in which a presumption of undue influence was established, and hence that the burden of refuting it was cast upon the proponent, and the proponent as strenuously insisting that the burden of establishing undue influence remained with the contestants, and that, unless they affirmatively showed such influence, the will should be admitted to probate.

There is no question as to the sanity of the testatrix or that the legal formalities necessary to the execution of the will were complied with. The sole question to be determined is as to the existence of undue influence.   Actual undue influence may consist of threats of personal harm or duress, under the force of which a person makes a testamentary disposition of his property which is really against his will.   In this same category is the undue influence exerted by a strong mind over a weak one by domination, by deceit, or by constant importunity and persuasion which the weaker mind is unable to resist.   Undue influence of this type can never be presumed, but is an issue to be affirmatively established by the contestant; and, unless so affirmatively established, the will must be admitted to probate.   This was the character of the undue influence involved in the following cases: Children's Aid Society v. Loveridge, 70 N. Y. 387; Dobie v. Armstrong, 160 N. Y. 584, 55 N. E. 302; Matter of Martin, 98 N. Y. 193; Tyler v. Gardiner, 35 N. Y. 559; Cudney v. Cudney, 68 N. Y. 148; Matter of Bernsee, 141 N. Y. 389, 36 N. E. 314; Delafield v. Parish, 25 N. Y. 9.

As this condition of affairs has not been shown in this case, the will would be entitled to probate, were it not for the principle that in certain cases, differing from those cited, there arises the presumption of undue influence, in which cases the burden of establishing freedom from undue influence is cast upon the proponent.   These cases arise where the beneficiary under a will maintains some confidential relation to the deceased and where the will excludes the natural objects of the testator's bounty.   This distinction has been recognized from an early date in our jurisprudence, and applies, not alone to testamentary dispositions, but to all transactions between attorney and client, or between other persons holding positions of trust and their wards.   In discussing the ques-

tion in its application to the relation of attorney and client, Story, in his work on Equity Jurisprudence (section 310), says:

"It is obvious that this relation must give rise to great confidence between the parties and to very strong influences over the actions and rights and interests of the client. The situation of an attorney or solicitor puts it in his power to avail himself, not only of the necessities of his client, but of his good nature, liberality, and credulity, to obtain undue advantages, bargains, and gratuities. Hence, the law with a wise providence not only watches over all the transactions of parties in this predicament, but it often interposes to declare transactions void which between other persons would be held unobjectionable."

This principle was further adverted to in the case of Decker v. Waterman, 67 Barb. 460, in these words:

"The fact that such a relationship exists does not prevent the principal from making a voluntary donation to his agent and attorney. The same is not absolutely prohibited by the rules of law. But, when it is established that such a relationship exists between the donor and donee, then, before the validity of the gift will be upheld; it must be made to appear that the transaction was unaffected by fraud of any description whatever, either actual or constructive. The burden of proof rests on the donee to establish its perfect fairness and propriety. * * * If such proof cannot be given, then, the case will be treated as one of constructive fraud, and set aside."

But the clearest statement of this rule, as applicable to probate matters, is contained in the celebrated case of Marx v. McGlynn, 88 N. Y. 357, at page 371:

"But there are certain cases in which the law indulges in the presumption that undue influence has been used, and those cases are where a patient makes a will in favor of his physician, a client in favor of his lawyer, a ward in favor of his guardian, or any person in favor of his priest or religious adviser, or where other close confidential relationships exist. Such wills, when made to the exclusion of the natural objects of the testator's bounty, are viewed with great suspicion by the law, and some proof should be required beside the factum of the will before the will can be sustained."

Further affirmance of the doctrine is found in a recent case in the Court of Appeals, that of Doheny v. Lacy, 168 N. Y. 213, 61 N. E. 255:

"In these confidential relations, the situation of the parties is regarded as unequal, and as conferring upon one a certain control or domination over the will, conduct, and interests of the other. Transactions between them are, therefore, scrutinized closely, and presumptions arise of their impropriety, which must be met where an advantage is derived by the presumably dominant party."

The reason for this rule is based on public policy, and its application is in no way dependent upon the fact of whether or not the testatrix is in full possession of her faculties. Its effect is simply to shift the burden of proof, which ordinarily must be borne by the contestants, onto the shoulders of the proponent, and to require him to show affirmatively, in addition to the factum of the will, that the will is beyond controversy in fact the will of the deceased, and is not the product or result of suggestion or domination on the part of the person sustaining the confidential relation. In the determination of this case, therefore, the first question for consideration is whether there existed between the testatrix and the witness Johnson such a confidential relation as would bring it within the rule.

The testatrix left as her only heir at law and next of kin an adult son, and there survived her also her husband, who had been judicially declared incompetent to manage his affairs and was confined in an institution for treatment. These persons, who were the natural objects of her bounty, received no mention whatever in her will. Johnson had acted as her lawyer for many years, and had drawn and supervised the execution of three previous wills which she had made. He had also represented her in a fiduciary capacity at certain times by attending to the deposit or collection of moneys which she possessed. By the will under review he is made executor, and also trustee of a fund created for the benefit of a friend of the deceased. The residuum of the estate goes to his grandchildren, whose father is dead and who are dependent upon him for support. As to the share of these grandchildren it is at least debatable whether he is not in control of it as trustee until they arrive at the age of 21 years. This subject will be discussed later in this opinion.

It will be obesrved that the cases to which reference has been made declare that a presumption arises, when a will is made in favor of a confidential agent, irrespective of the manner in which the will is drawn or the circumstances surrounding it. But the presumption becomes very much stronger where, as in this case, the will is drafted by the attorney in his own favor, in pursuance of secret instructions received from the deceased, and where he supervises the witnessing of the same, and, further, where two of the three subscribing witnesses thereof are members of his immediate family, namely, his wife and his son. Notwithstanding this situation, the proponent contends that, from all the circumstances of the case, enough has been shown to warrant the admission of the will to probate. I will therefore proceed to consider the entire evidence submitted.

At the outset, it is obvious that the proponent relies very largely upon a line of decisions bearing on the establishment of actual undue influence and lack of testamentary capacity. The rule as laid down in such cases is undoubtedly correct, but is not applicable to the peculiar case under consideration, as the sole question here is whether there is constructive fraud or presumptive undue influence in the drafting of the will, within the exception above referred to. The circumstances leading up to its execution are as follows: This was the fourth will of the deceased. By her first will she had, apparently, made ample provision for her husband, who at the time was evidently of sound mind. By her second will she had made ample provision for her only son, the contestant herein, and also made him executor. By her third will she had created a life estate for the Mrs. Reilly mentioned in the fourth will, and also had given the balance of her property to Penn Esterbrook, the residuary legatee mentioned in the will now offered for probate. Johnson states' that the testatrix called on him and requested that the will under discussion be drafted. It appears that on Christmas evening the deceased came to the residence of Johnson. It is not shown whether this was the result of an arrangement between them. She stayed to dinner, which was had about half past 6 in the evening, and after dinner it was declared that she was going to make her will. Johnson produced the document which is now presented for probate. A neighbor, who lived two doors away, was called in; and thereupon, without reading the

will to the testatrix or explaining its terms in any way, either privately or in the presence of any of the witnesses, Johnson handed over the paper and the deceased signed it, declared it to be her last will and testament, and requested the three subscribing witnesses to affix their names thereto. The three subscribing witnesses were the neighbor who was thus hurriedly called in and the wife and son of Johnson, the draftsman and executor of the will. The neighboring witness returned to his home, and the son who had acted as witness left the house for the evening. Mrs. Johnson, the wife, states that the testatrix thereupon requested Johnson to tell her the character of the will, and that upon his doing so, she said to the deceased that the latter should recognize her own son; but the deceased replied that he had broken her heart and that she was making her will as she desired. No further conversation was had, declares Mrs. Johnson, except that the testatrix requested Johnson to keep the will until her death.

With the exception of the statement of the testatrix that her son had broken her heart, there is absolutely no suggestion of any reason why her son and husband were excluded from the will in question, or why there was such a change from her earlier wills. Certainly, so far as the husband is concerned, it is not shown that this misfortune is due in the slightest degree to any misconduct on his part, nor that there was any reason why the deceased should have wished to exclude him from participating in the division of her estate. It does not appear whether his estate is sufficient to sustain him and enable him to receive the medical attention which is necessary, or whether this expense is to be borne by the son, who is also disinherited. It is not clear in what way the son had broken his mother's heart, as she describes it; and there is no suggestion of any kind as to any improper conduct by him, or as to any lack of the respect and affection due from a child to a mother. Johnson, the lawyer and draftsman of the will, states that he was told by the deceased what she wished and that he embodied her wishes in the will. Upon inspecting the will, it is seen that he is made trustee of the fund of $1,500 created for the benefit of Mrs. Reilly. There is also a provision that, if he left the state, he should not be required to give a bond as executor, and another provision giving him a power of sale of the real estate. He admits that these latter provisions were creations of his own, inserted in the will without a suggestion of their necessity on the part of the testatrix, or without any consultation with her as to their advisability. At one point he says he read the will to deceased and she understood it. When pressed on cross-examination, he distinctly admits that these provisions were never shown to the testatrix and were never explained to her; and, so far as anything is disclosed, she knew nothing of them.

Johnson's testimony as to the effect of these provisions is very disingenuous, unsatisfactory, and confusing. At first, he suggests that the clause with relation to the power of sale was inserted merely that, in the event of the personal estate being insufficient to pay debts and testamentary expenses and to meet the trust for the benefit of Mrs. Reilly, the real estate might be readily sold and the proceeds applied to those purposes. Even if such provision was an advisable and necessary one, the scrivener of a will has no right to insert it and to procure the

execution of the will by his client without explaining to her the desirability of its use. It may very well be that, if the attention of the deceased had been called to the possibility that the personal estate might be insufficient to meet the specific legacies contemplated by the testatrix, they would be omitted or modified. Certainly, in this respect, at least, this portion of the will is in no way shown to be the will of the deceased. From the evidence of Johnson it is hard to say whether he takes the position that the power of sale is limited to its necessary exercise, or whether it was intended to make him the trustee of the entire estate until his grandchild comes of age. While his testimony on this point is shifting and evasive, I am inclined to think that, if it were not for the stress of this contest, the belief of Johnson at the time of the drafting of the will was that a complete trust of every dollar of the estate was created, of which he was the trustee. This is proven in the first instance by the admissions, very reluctantly drawn from him, that the amount of the personal estate of the deceased was far in excess of the sum of the trust fund necessary for the benefit of Mrs. Reilly. and also by the showing that the deceased was practically free from debt or other obligation. In addition, there runs through his testimony at various points remarks and admissions which are only consistent with the fact of this estate being in his hands as trustee. For example, at one place he recites that the power of sale was a desirable provision to retain in the will, so that, in the event of the real estate depreciating in value at any time, it might be a good business proposition to sell it. At another point he states that it might, perhaps, be advisable that the proceeds of the property should be invested for the infants until their majority.

With the admissions of Johnson that this situation was not explained to the deceased at all, but only the statement made that there were provisions for the benefit of Mrs. Reilly and the grandson of the lawyer, it certainly cannot be said that the testatrix, at the time of the execution of the will in question, had the complete understanding of the testamentary document which was presented to her for signature which the law requires and demands. Even the assertion that she knew anything at all in relation to the document proceeds, not from any disinterested witness, but from the wife of Johnson, who is also the grandmother of the residuary legatees of the will. It is sufficient to say that the burden of rebutting the presumption of undue influence is upon the proponent, and that burden is not successfully borne by the production of the evidence of a witness who is manifestly in the interested position of this one. The spirit of the rule giving rise to the presumption of undue influence is what the court should consider. It is true, perhaps, in this case, that the estate is not given directly or absolutely to Johnson, who drafted the will; but he is made trustee of the entire estate. The cestuis que trustent are his infant grandchildren, dependent upon him for support; and the court can readily understand that these helpless infants will not be in a position to exact and demand a rigorous line of conduct from this man as trustee. If this will is to be sustained, all that any clever rogue has to do, in order to evade the spirit of the rule of constructive fraud, is to draft a will creating himself the trustee of the estate, the beneficiary of which is absolutely subject to his domina-

tion, to conceal the trust from the testator, and in this way to nullify the principle of law established for the proper protection of persons compelled to rely upon a lawyer.

The policy of the law throws this mantle of protection over the client in transactions of this kind with his attorney, even where the client is living and in full possession of his faculties and capable of defending himself. The lips of the testatrix are sealed in death. Except the draftsman and beneficiary of this will, no person can say what her reasons were for the instructions which she gave concerning the will, and there is greater necessity for the application of the rule of protection referred to. The proponents have failed to bear the burden which is cast upon their shoulders; and hence, in accordance with Decker v. Waterman, supra, which states that, "when such proof cannot be given, then the case will be treated as one of constructive fraud, and set aside," and with Marx v. McGlynn, supra, which says that "proof should be required beside the factum of the will before the will can be sustained," the will is not sustained, and probate is refused.

Let findings and decree be submitted accordingly.

Probate denied.